## UNITED STATES *v.* ALFRED DUNHILL OF LONDON, INC.

**No. 5991.**—Invoice dated London, England, November 7, 1941.
Certified November 7, 1941.
Entered at New York, N. Y., December 3, 1941.
Entry No. 727944.

### First Division, Appellate Term

(Decided March 23, 1944)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*John D. Rode* for the appellee.

Before OLIVER, WALKER, and COLE, Judges; COLE, J., concurring; WALKER, J., dissenting

OLIVER, Presiding Judge: This is an appeal from the decision and judgment of the single judge, reported as Reap. Dec. 5794, which sustained importer's appeal for reappraisement and found the entered values of the merchandise at bar to be the proper dutiable values.

The merchandise before us consists of smoking pipes manufactured by Alfred Dunhill, Ltd., of London, England, and exported to Alfred Dunhill of London, Inc., of New York City. It was stipulated

between counsel for the respective parties that the proper basis for finding dutiable value herein was cost of production as defined in section 402 (f) of the Tariff Act of 1930, it being conceded that there was no foreign value, export value, or United States value.

The importer by its evidence established that when these pipes were sold to unregistered dealers in the home market, they were subject to a purchase tax outlined and described in a tax law of the United Kingdom entitled "Finance (No. 2) Act, 1940, 3 & 4 Geo. 6. Ch. 48." This tax law provided for the imposition of a tax on sales of certain listed items of merchandise, which included pipes, when sold to nonregistered dealers. It further appears that when the pipes were sold to registered dealers or were sold for export, no tax was imposed on such sales. When the tax was imposed, as in the case of sales to unregistered dealers, it was set forth on the invoice as a separate item and was collected by the manufacturer, placed in a separate account, and transmitted to the Government quarterly. The merchandise herein was entered at £0 16s. 2d. each for the quality "Standard Bruyere pipes" and at £0 15s. 6d. each for the quality described as "Shell Briar pipes." They were appraised at £0 23s. 4d. and £0 22s. 4d. each, respectively, net, packed, including taxes. It is conceded that the only difference between the entered and the appraised values is represented by the sales tax hereinbefore mentioned which amounted to approximately 33⅓ per centum. It is the Government's contention here, as it was upon the trial before the single judge, that the sales tax is a proper part of the dutiable value under the formula for ascertaining cost of production as set forth in section 402 (f) of the Tariff Act of 1930.

Section 402 (f) of the Tariff Act of 1930 reads as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Appellant does not claim that this tax is any part of section 402 (f) (1), which covers cost of materials and the cost of fabrication, manipulation, or other process employed in the manufacture of the article, nor is it claimed to be any part of section 402 (f) (3), which covers cost of containers, nor as any part of section 402 (f) (4), which provides for the profit to be charged. The Government confines its contention to the provision of section 402 (f) (2) claiming this tax dutiable as part of "the usual general expenses." This contention that a purchase tax is a proper item of expense under the formula as set forth in section 402 (f) for ascertaining cost of production is something new in customs litigation. It has not heretofore been passed upon by our courts. The Government's theory, and it is stated to be just that, is that cost of production is a "constructive foreign value," that such a sales tax as is here under consideration would be properly a part of foreign value, and therefore it should properly be part of cost of production. The importer has particularly directed its proof toward establishing that this purchase tax is not part of the "usual general expenses" incurred in producing the pipes in question. (*United States* v. *Maier*, 21 C. C. P. A. 41, T. D. 46378.)

In *Lionel Trading Co.* v. *United States*, 24 C. C. P. A. 432, T. D. 48900, the court referred to cost of production as a "substitute for foreign value." The Treasury Department in T. D. 48860 refers to it as a "constructive foreign-market value." By whichever term it is more aptly described, the fact remains that value based on cost of production is something different from foreign value as that value is defined in section 402 (c). In the language of the layman, foreign value may be said to be the usual wholesale price at which anyone can buy the same or substantially the same article in the country of origin with the other elements set forth in section 402 (c) present. The foreign value and the value arrived at by the cost of production method of calculation do not necessarily produce the same monetary result. It might well be that the usual wholesale market price in the foreign market would vary considerably from the value found to be the proper dutiable value under the formula for finding cost of production as set forth in section 402 (f).

It is quite obvious that cost of production as defined by section 402 (f) is not confined to the naked cost of raw materials, labor, and manipulation because specific provision is made in the formula for profit (section 402 (f) (4)). There is nothing, however, in the formula for ascertaining cost of production which directly or inferentially authorizes the inclusion of any items of expense incurred *by the purchaser* after the article has been manufactured and is packed ready for shipment. The tax here in question was not a charge arising out of the production of the merchandise. If the merchandise was never sold, this tax item would not even appear on the books of the manu-

facturer and yet the cost of production would have been determined. If sold for export or to registered dealers, there would not even have been an entry made of this tax. Even when sold to unregistered dealers in which instances the tax did attach, the tax was billed separately, collected as a separate item, kept separate and apart from the funds representing the proceeds of the sale, and remitted quarterly to the Government. The tax was no part of the cost of producing the article, no profit was figured on it, nor was it figured as part of the sales price by the manufacturer. It was a separate financial transaction collected by the manufacturers from unregistered dealers for the British Government. It was no part of any gross or net income. This tax was not placed upon the materials going into the manufacture of the merchandise. (*Wecker & Co.* v. *United States*, 47 Treas. Dec. 825, T. D. 40989 (G. A. 9017).) It was paid *by* the purchaser *through* the manufacturer *to* the Government. The tax simply had a temporary resting place with the manufacturer on its way to the coffers of the British Government.

Appellant relies heavily upon the holding of our appellate court in *Hugo Reisinger (Inc.) et al.* v. *United States*, 20 C. C. P. A. 67, T. D. 45683, which held, *under the facts in that case*, that the German sales tax there in dispute was properly part of the *foreign value*. Appellant here contends that the sales tax in the case at bar is properly part of *cost of production* on the theory that it would have been considered part of foreign value if the facts herein made foreign value the proper basis for dutiable value. Whether or not such a tax under the facts in the case at bar would be properly part of foreign value is not conceded and is not before us. The Treasury Department in T. D. 48860 (71 Treas. Dec. 431) set forth its view that cost of production is a constructive foreign-market value and that the general expenses provided for therein are all those usually incurred *by the manufacturer or producer* of the particular merchandise under consideration "in connection with the creation, storage, sale, and distribution of merchandise * * *." The tax here before us was not an expense "incurred by the manufacturer or producer." It was incurred by the *purchaser*. It was not a part of the manufacturer's expense "in connection with the creation, storage, sale, and distribution" of these pipes.

There can be only one statutory cost of production value. If the contention of the Government herein were to be sustained, we would have one cost of production value, if these pipes were sold to a registered dealer or for export (in which case no purchase tax was due), and a different cost of production value if sold to an unregistered dealer. The cost of producing the article under the formula set forth in section 402 (f) (2) is the same regardless of whether it was sold to registered or unregistered dealers and for domestic consumption or

for exportation. We agree with the findings of the single judge, from whose decision and judgment this appeal is taken, that "the evidence produced by the plaintiff establishes every requirement of the statute for the proof of cost of production"; that this purchase tax is not a proper part of such cost of production, and that the entered values herein are the proper dutiable values of the merchandise at bar.

We find the following:

1. That the merchandise at bar consists of smoking pipes manufactured in England by Alfred Dunhill, Ltd., and imported by Alfred Dunhill of London, Inc., located in New York City.

2. That there was no foreign, export, or United States value for this merchandise and that the proper basis for determining value was cost of production as that value is outlined in section 402 (f) of the Tariff Act of 1930.

3. That sales of such pipes when sold in the United Kingdom to unregistered dealers were subject to a purchase tax and when sold to registered dealers in the United Kingdom or for export therefrom no purchase tax was imposed.

4. That said purchase tax when imposed applied only to finished pipes. It did not attach to the materials from which the finished articles were made. The tax was billed as a separate item, was deposited in a separate account, and was remitted to the British Government quarterly.

We therefore conclude as a matter of law that the judgment of the court below should be affirmed.

Judgment will be rendered accordingly.

### CONCURRING OPINION

COLE, Judge: There is no dispute concerning the issue. Concededly, it is confined to the question whether a tax imposed by the British Government is an item to be included in cost of production, section 402 (f) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (f)), admittedly the proper basis for appraisement of the pipes in question. Appellant contends that the tax comes within the category "usual general expenses" provided for in paragraph (2) of said section 402 (f). For the purposes of this case, we are concerned only with the imposition of the tax and its relationship to cost of production.

The language of the four paragraphs, comprising the statutory definition of such basis for appraisement as set forth in section 402 (f), *supra*, is clear and unambiguous. Paragraph (2) thereof expressly provides that the minimum amount of "usual general expenses" shall not be "less than 10 per centum of such cost," obviously referring to the "cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise," as provided in the immediately preceding paragraph

(1). The provisions of paragraph (1) form a basis for the "usual general expenses" chargeable in paragraph (2). In other words, if the minimum amount is based on the costs provided for in the preceding paragraph, it is a logical sequence that the only amounts to be included as "usual general expenses" are the expenses related to the items covered by paragraph (1). I cannot conceive that Congress intended to include in "usual general expenses," as applied to statutory cost of production, every item of usual business expense, however remote to any "process employed in manufacturing or producing such or similar merchandise."

Section 402 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402), in its entirety, presents a painstaking effort on the part of Congress to set forth in detail numerous items and considerations to-be included in arriving at the various values discussed therein. Taxes, like the one in question, are not uncommon impositions. The particular tax under consideration, being as high as 33⅓ per centum of the sales price, assumes too much importance to be regarded as an item Congress intended to include in cost of production for appraisement purposes without being mentioned. If it were the legislative intent to have this tax embraced within the several items comprising statutory cost of production, it is fair to assume that specific appropriate language would have been used, rather than leaving it to be a matter within the realm of speculation. It was not specifically included; should it not therefore, because of its prominence, be excluded?

The above reasoning definitely excludes the tax in question from the statutory designation "usual general expenses" in finding dutiable cost of production. It in no way relates to a cost for obtaining materials or for the fabrication, manipulation, or any other process employed in the manufacture of the articles in question or similar merchandise, and is not a factor, making the pipes available as such, but attaches to the finished product, and then only when sold for home consumption or to unregistered dealers.

The construction hereinabove outlined is supported by cases dealing with cost of production and cited herein. The gist of the decision in *United States* v. *Henry Maier*, 21 C. C. P. A. 41, T. D. 46378, is that dutiable cost of production is a constructive foreign-market value and to give effect to such legislative intent the costs to the individual manufacturer of the imported merchandise are not to be the "sole criterion in the application of the statute," but reference should also be had, if the evidence is available, to the costs of other manufacturers and producers of such or similar merchandise in the foreign market. The court referred specifically to "usual general expenses," saying that in determining dutiable cost of production they contemplated

"the usual general expenses *incurred in the production* of 'such or similar merchandise' " [italics mine], a conclusion directly in line with that heretofore set forth.

In the case of *Lionel Trading Co., Inc.* v. *United States* (24 C. C. P. A. 432, T. D. 48900) the court was required to determine whether the dutiable cost of production of the exporter and manufacturer, Parfums Corday of Paris, should include its price to subcontractors who made boxes and bottles for the sole use of said manufacturer from designs and molds furnished and exclusively owned by the latter. It was contended by the importer that since Parfums Corday of Paris did not actually produce the boxes and bottles, the manufacturing costs therefor should not be included in their cost of production for tariff purposes. In holding such contention to be without merit, the court said:

* * *. It seems obvious that a part of the cost of production of the bottles was in the making, producing, and furnishing the designs and moulds, and that a part of the cost of producing the boxes was the cost connected with the designs. These items clearly go into the cost of production of the merchandise under consideration. The term "in manufacturing or producing such or similar merchandise" in paragraph (1) of section 402 (f), *supra*, must be read in connection with the whole provision concerning cost of production.

As was suggested in the opinion by Judge Brown, speaking for the appellate division of the Customs Court, and as has been held by this court, the determination of the cost of production is an effort to arrive at a substitute for a foreign-market value. *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378. It is difficult to see how a purported cost of production which did not include essential elements of expenses for material and labor which went into the cost of producing the articles exported would properly reflect a substitute foreign-market value therefor.

Of like tenor are the cases of *Ravenna Mosaics, Inc.* v. *United States* (49 Treas. Dec. 699, T. D. 41503) and *Carey & Skinner* v. *United States* (3 Cust. Ct. 600, R. D. 4663) also cited by appellant. In the *Ravenna Mosaics, Inc.*, case, the costs of plans and sketches, made in this country for use of the German manufacturer in producing mosaic pictures and windows, were held to be part of the cost of production for appraisement purposes of the imported merchandise. The *Carey & Skinner* case cited with approval the *Lionel* case, *supra*, in holding, as part of dutiable cost of production of imported paper-mill machinery, blueprints furnished by the inventor and exporter of the machinery outlining installation thereof. In all of the last three cited cases, the items, which the court held to be part of statutory cost of production, related to the fabrication, manipulation, or a process connected with the manufacture of the imported merchandise. Clearly, they support the judicial construction announced in this opinion.

WALKER, Judge: I regret that I am unable to agree with my colleagues in the decision of this case, which for the first time raises an important issue with respect to the cost of production formula for determining value set forth in section 402 (f) of the Tariff Act of 1930.

As the issue was presented, and apparently as regarded by my colleagues, the question is whether or not a tax imposed in connection with a sales transaction may be considered a "usual general expense" under paragraph (2) of the formula referred to.

I agree with the statement in Presiding Judge Oliver's opinion that—

It is quite obvious that cost of production as defined by section 402 (f) is not confined to the naked cost of raw materials, labor, and manipulation because specific provision is made in the formula for profit (section 402 (f) (4)).

I disagree, however, with what follows. In my view, the caption "cost of production" is a misnomer, for the formula does not set up the cost of producing merchandise alone, but the cost of producing and selling merchandise. Profits do not arise until goods are sold. Expenses having to do with selling merchandise, are, therefore, in my opinion, contemplated in the cost of production formula.

The term "expense" is extremely broad when considered in the ordinary meaning, and refers to an outlay or disbursement. When coupled with the term "general," as it is in the cost of production formula, it refers to those items not chargeable to any particular unit of production, but to the entire output (see *Austin, Baldwin & Co.* v. *United States,* 7 Ct. Cust. Appls. 186, T. D. 36505, at p. 192). I therefore see no reason why an expenditure, disbursement, or outlay for a tax imposed in connection with the transaction of sale should not be considered to be a general expense. Certainly other taxes imposed upon business, such as corporate taxes, license fees, etc., are general expenses, and I see no reason why a tax in connection with sales should not be.

On the question of whether such a tax might be considered a *usual* general expense, it seems to me that if sales upon which a tax is levied occur in the ordinary course of events or in ordinary practice, are customary, frequent, or common (cf. definition of "usual" in Funk & Wagnalls New Standard Dictionary, 1940 ed.), as the record indicates they are, then it is a usual general expense. The mere fact that under certain circumstances (i. e., sales to registered dealers, or for exportation) the tax does not accrue, does not affect the fact that it is a *usual* general expense.

The tax item involved is rejected by Presiding Judge Oliver as a "usual general expense" for the following six reasons:

(1) It is said that it is incurred by the purchaser. As I read the British law, the *seller* is the person primarily liable for the tax. In section 22 (1) (a) it is provided that—

The person accountable for tax chargeable shall  *  *  *  where the purchase by virtue of which it is chargeable was made from a wholesale merchant or a manufacturer, be the seller under that purchase.

Furthermore, even if the tax were incurred by the purchaser, I see no reason why it should not be a usual general expense. There is nothing in the cost of production formula which requires that the items covered thereby must be paid by the manufacturer or the seller, and it is not uncommon for the purchaser to supply parts or services in connection with the merchandise he buys. The *value* of that merchandise includes the cost of the parts or services so supplied, and it is *value* that is treated in section 402. Therefore, it matters not who pays for the item so long as it is part of the value under the formula.

(2) It is said it is not a charge arising out of the production of the merchandise. As I have hereinbefore pointed out, the cost of production formula does not concern itself with production alone, but with selling also.

(3) It is said that if the merchandise was never sold the tax would not arise but the cost of production could nevertheless be determined. This, of course, is based upon the premise that no selling expenses can be part of the cost of production, with which I do not agree. The fact is, in this case, that such or similar goods *were* sold.

(4) It is said that two costs of production would arise if the tax were held to apply, one when the goods were sold to unregistered dealers, and the other when sold to registered dealers or for export. This entirely overlooks the word "usual" in the phrase "usual general expenses." It is not the general expenses of *every* transaction, but the *usual* general expenses that are covered by paragraph (2) of the formula.

(5) It is said that the tax was billed separately, collected as a separate item, kept separate and apart from the funds representing the proceeds of the sale, and remitted quarterly to the British Government. I fail to see how the method of accounting used in connection with the tax can affect or give any indication as to its character. The question is whether it is part of the value as determined under the cost of production formula. In this connection see *Hugo Reisinger, Inc., et al.* v. *United States*, 20 C. C. P. A. 67, T. D. 45683, wherein it was held that the fact that a sales tax there involved was required to be separately listed did not affect its being part of the value. Nor, in this connection, does it matter that the tax ultimately was paid into the British Treasury. There is nothing either directly or by inference in section 402 (f) which requires that the amounts represented by the various items should be paid to the manufacturer or seller alone. So long as those items are part of the value as determined by the formula it matters not who receives payment for them.

(6) It is said that no profit was figured on the tax nor was it figured as part of the sales price by the manufacturer. There is nothing in

section 402 (f) which says that profit thereunder must be figured on *each item* of usual general expenses or that it must be part of the sales price figured by the manufacturer. It says that there shall be an addition for profit—

> * * * equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

and that if such profit should turn out to be less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of the formula, then 8 per centum thereof is to be used instead of such profit.

Profit usually means the excess of the total amount received over the total amount expended in producing and marketing goods, and the total amount expended necessarily includes all expenses in connection with the goods from the first acquisition to the final disposition. If profit were broken down and assigned to the various items expended, the total of which was used in calculating it, it would be seen that no profit should be figured on many such items, particularly administrative expenses, e. g., postage, corporate taxes, stenographic hire, etc., *when considered by themselves.* But profit is not figured on each item taken by itself, but on the total of all such items.

The profit contemplated by section 402 (f), then, is one based upon the inclusion of all expenses—not merely production or manufacturing expenses alone. If that profit should be less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2), then 8 per centum thereof is substituted. By this device Congress indicated the minimum *amount* it should consider as profit; it did not indicate that "usual general expenses" were to be broken down and only those upon which a profit could be figured *by themselves* should be considered.

So far as the tax being figured as part of the sales price by the manufacturer, I agree that it may not have been *expressed* as part of the sales price, but both parties knew, in the case of transactions with unregistered persons, that it must have been paid before the fruits of the sale could be enjoyed. In that sense, then, it was part of the sales price.

As I read Judge Cole's concurring opinion, it is based upon two reasons: (1) From the fact that in paragraph (2) of section 402 (f), *supra*, the minimum amount of usual general expenses to be taken is 10 per centum of the manufacturing costs specified in paragraph (1), he concludes that—

> * * * it is a logical sequence that the only amounts to be included as "usual general expenses" are the expenses related to the items covered by paragraph (1).

—that is to say, manufacturing expenses, and excluding administrative or selling expenses.

It is a matter of common knowledge that in the case of many products the expenses other than manufacturing expenses are equal to, and often exceed, the manufacturing expenses. It would be attributing an unrealistic attitude to Congress to assume that in establishing a formula by which value might be determined, it would omit so large an element of value.

Furthermore, I do not think that the language used in paragraph (2) warrants the interpretation Judge Cole has put upon it. As in the case of profit, Congress indicated the minimum *amount* it would consider to be "usual general expenses," but it did not indicate or limit the *character* of those usual general expenses.

(2) Judge Cole's second reason is connected with the fact that the tax in this case, being relatively high, would not appear to have been intended to be included in the cost of production formula by Congress unless more specific appropriate language had been used. Here, again, I cannot agree with the conclusion my colleague has drawn. The tax in question had not been in existence when the statute was enacted. I do not see why the amount of a subsequently existing tax should affect its inclusion as an item to be considered under the cost of production formula. Suppose the tax, instead of being 33⅓ per centum, were 5 per centum, or one-tenth of one per centum? It must not be forgotten that Congress was trying to establish a formula to take care of all cases as they might arise. If, in a particular case, one item to be considered might be disproportionate or abnormal, that is one of the vicissitudes of economic and political life.

It is my view, therefore, that the position of my colleagues, that the tax at bar is not part of the usual general expenses in connection with merchandise such as or similar to that here involved under the cost of production formula, is not tenable.

I see only one feature remaining to be considered. It appears by section 22 (2) (a) of the British Act, that the tax becomes due—

* * * where the purchase by virtue of which it is chargeable is other than an importer's purchase, on the delivery of the goods under the purchase; * * *.

It may be argued that since the tax does not become due until delivery, it is not part of the expenses of sale. In trade and commerce one buys goods in order to acquire the basic rights of ownership, and among these rights is that of possession. In the case of goods sold in England which are subject to tax under the British Act, the enjoyment of the right of possession, which is one of the chief reasons why chattels personal are purchased, cannot be had by the purchaser without liability for the payment of the tax being incurred. The tax, then, is an inseparable part of the transaction. It would be absurd to think that anyone who purchased goods under a chargeable purchase did so with the intent not to take delivery of them or exer-

cise his right of possession. See also, in this connection, *General Dyestuff Corp.* v. *United States*, 19 C. C. P. A. 309, T. D. 45480.

For the foregoing reasons I am of the opinion that the decision of the court below should be reversed, and judgment should issue accordingly.