OXFORD UNIVERSITY PRESS, N. Y., INC. (M. FARRIS & CO., INC.) *v.* UNITED STATES

**No. 6284.**—Invoice dated London, England, July 29, 1941.
 Certified July 30, 1941.
 Entered at New York, N. Y., September 19, 1941.
 Entry No. 715092.

(Decided June 13, 1946)

*Lane & Wallace* (*William Young* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

KINCHELOE, Judge: This is an appeal for a reappraisement of certain unbound books in sheets, invoiced as "5000 Oxford Dictionary of Quotations. Folded and collated," exported from England July 30, 1941, by the Oxford University Press, London, and shipped to the Oxford University Press, New York, Inc. The books were invoiced and entered as of the value of 6 shillings sterling per copy on the basis of the cost of production, plus packing and marking, and it was stipulated and agreed between counsel at the trial that the cost of production was the proper basis of appraisement herein, there being no foreign, export, or United States value for same.

It is shown that up to the time of exportation herein 20,000 copies of the book were printed, of which 10,000 have been imported by plaintiff. The appraised value of the 5,000 copies in question is based on the actual cost of production of the said 20,000 copies of the book, while the importer claims that the cost of production of the involved merchandise should be based on a contemplated printing of 65,000 copies, which would reduce the cost of certain items and make the cost of the books equal to the entered value. And it has been agreed that if the cost of the various items are to be limited to the number of copies produced up to the time of the exportation of the involved merchandise (20,000), the proper cost of production would be the appraised value, namely, 8 shillings 9 pence per book, plus packing and marking.

Plaintiff in support of its entered value introduced in evidence two affidavits of Humphrey S. Milford, manager of Oxford University Press, London, dated February 14, 1944, and February 19, 1945, and marked exhibits 1 and 2, respectively; also report of the American Consul at London, dated August 23, 1944, on the Government's investigation on the cost of production of the involved merchandise (marked collective exhibit 3).

In collective exhibit 3 the items of cost are shown in greater detail than in exhibit 1, as requested by the American vice consul. The total of the costs in both exhibits is exactly the same, however, except that cases and packing, shown in the consular invoice are detailed in exhibit 1 and are not shown in exhibit 3.

The Government does not appear to dispute any of the stated costs as such, but takes exception to the spreading of the cost of the plates over 65,000 copies of the dictionary, and contends that the various items of costs set forth in the affidavits should be included in the cost of the 20,000 copies actually produced up to the time of exportation of the merchandise in question, and this is really the only issue in the case.

On this point we quote, so far as relevant, from the said report of the American consul (collective exhibit 3) to the Secretary of State, Washington, D. C., as follows:

After acquainting the Oxford University Press in London with the desires of the Treasury Department and the background of the request for the investigation, the following information was submitted to the Embassy by the Oxford University Press.

"The current costs (i. e., printing and paper) are based on an edition of 20,000 copies printed at one time. The non-recurring costs (i. e., composition, editorial, correction and proof-reading, plates, translations, indexing, permission fees and royalties) are spread over 65,000 copies, of which 47,320 copies have already been printed. This is, I believe, the usual course followed by publishers when dealing with the costs of reference books likely to be in demand for many years.

Counsel for plaintiff in their brief argue as follows:

A reference book such as a dictionary is a work which must be compiled by persons having expert knowledge, with great care and extensive research and is expected to be a marketable article for many years. It follows that considerable outlay is encountered for composition, editorial work, corrections, proof reading, indexing, etc. together with manufacture of the printing plates.

To undertake a work of this kind, the publishers must have had reasonably well founded expectations that it would be a marketable article for years to come.

That the publisher's expectation of marketing at least 65,000 copies was not overoptimistic is shown by the fact that over 47,000 copies were printed during three war years (Exhibit 3) involving the known paper shortage.

The argument of plaintiff is of course quite a plausible one, as no doubt the publisher of almost every book hopes for a big enough sale and demand for same to warrant further editions or reprints. Such hopes or expectations however may or may not be realized, so that at best it would seem to be a rather indefinite and uncertain manner of arriving at any ultimate quantity of production. In the present instance it appears from the report of the American consul (collective exhibit 3) that 47,320 copies of the book "have already been printed." But that report is dated August 23, 1944, or just about 3 years after the exportation of the merchandise in question. At this time the ultimate production of 65,000 copies may now seem more probable than could with any certainty be determined when the books were exported. But we do not think that Congress intended that the dutiable cost of production value under said section 402 (f) should be made contingent or estimated on the basis of any ultimate quantity of production in the mind of a publisher or producer in determining the dutiable value of imported merchandise. Said section 402 (f) distinctly states in effect that the cost of production of imported merchandise shall include "The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, *at a time preceding the date of exportation of the particular merchandise under consideration* which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business" [italics mine]. Such language is certainly very clear and positive, and as it appears that only 20,000 copies of the books in question were printed or produced up to the time of the exportation of the instant importation from England, it would appear that the cost of all labor and material expended in the printing of the books, such as the composition, editorial costs, and the plates, etc., must necessarily be applied to the cost of production of said 20,000 copies in arriving at the dutiable value of the 5,000 copies involved in the present importation.

Upon the record and the agreed facts herein I therefore find and hold (1) that there was no foreign, export, or United States value for

such or similar merchandise, as those values are defined in section 402 (c), (d), and (e) of the Tariff Act of 1930; (2)·that the cost of production, as that value is defined in section 402 (f), is the proper basis for the determination of the dutiable value of the merchandise here involved; and (3) that such value is represented by the appraised value herein.

At the conclusion of the trial herein counsel for the Government moved to dismiss this reappraisement appeal on the ground that the plaintiff failed to make out a *prima facie* case, which motion was taken under advisement (R. 36). In view of my decision herein such motion is now hereby overruled, with an exception to defendant.

Judgment will be rendered accordingly.