(Reap. Dec. 9180)

SCHWEPPES (U. S. A.), LTD. *v.* UNITED STATES

Entry No. 900226.

(Decided June 30, 1958)

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: This is an appeal for reappraisement of certain flavoring extract exported from England on May 18, 1953, and entered at the port of New York. The merchandise was contained in certain steel drums which were invoiced and appraised at £40.0.0. Their value is not here in dispute (R. 3; 5).

The following stipulation was entered into between counsel for the respective parties:

(1) That, on or about the date of exportation, such or similar flavoring extract was not freely offered for sale for home consumption in England or for export to the United States nor for sale in the principal market of the United States (R. 3).

(2) That the time preceding the date of exportation ordinarily permitted for manufacture or production of such merchandise was about 18 months (R. 4).

(3) That one of the ingredients used in the manufacture of this product is ethyl alcohol and that the only issue is whether an excise tax actually paid by the manufacturer to the British Government on ethyl alcohol used in making the imported merchandise is part of the cost of production (R. 4).

(4) That the said excise tax amounted to 212 shillings, 4 pence, per proof gallon of ethyl alcohol and was refunded to the manufacturer on the exportation of the finished product to the United States (R. 4).

(5) That the actual cost of manufacture per imperial gallon, exclusive of the said excise tax, was as follows (R. 4):

| | |
|---|---|
| Ingredients | 34 shillings |
| Labor | 1 shilling, 5 pence |
| General expenses | 3 shillings, 1 pence |
| Profit | 4 shillings |
| Packing stainless steel drums | pounds 40 each |

(6) Appraisement was made at 303 shillings, 1.90 pence, per imperial gallon of extract, plus £40.0.0 for cost of drums, as follows (R. 5; 6):

The importation consisted of 1,248 imperial gallons, the equivalent of 1,291.68 proof gallons of alcohol.

| | |
|---|---|
| Total cost of ingredients and labor at 35 shillings, 5 pence, per imperial gallon for 1,248 imperial gallons | = £2,210.0.0.00 |
| Plus 1,291.68 proof gallons of alcohol at 212 shillings, 4 pence, per proof gallon | = £13,713.6.8.64 |
| Total cost for labor and material, including excise tax | £15,923.6.8.64 |

| | |
|---|---:|
| Plus 10% for general expenses_____ | £1,592.6.8.06 |
| TOTAL_____ | £17,515.13.6.70 |
| Plus 8% for profit_____ | £1,401.5.0.94 |
| TOTAL_____ | £18,916.18.7.64 |
| This is equal to (18,916 × 20, plus 18 shillings, plus 6.64 pence, divided by 1,248) per imperial gallon_____ | £0.303.1.90 |
| Plus cost of packing, drums, at each_____ | £40.0.0 |

(7) That the orange and lemon flavoring manufactured by Schweppes, Limited, of England, for use in Great Britain was the same as the orange and lemon flavoring manufactured by it for export to the United States, except that, in the product made for home consumption, the amount of alcohol used in said product consisted of approximately 70 percent ethyl alcohol and 30 percent isopropyl alcohol (R. 9).

(8) That the alcohol used in manufacturing the product for export to the United States was *all* ethyl alcohol (R. 9).

(9) That the portion of ethyl alcohol used in the product for home consumption was subject to the same rate of excise tax as the ethyl alcohol used in making the product for export to the United States (R. 9).

(10) That the isopropyl alcohol was free of tax and that no isopropyl alcohol was used in the manufacture of the product for export to the United States (R. 9).

It, accordingly, appears from the above that cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930, is the proper basis of appraisement.

The importer, in this appeal, contends that the statutory cost of production should not include the British excise tax which is paid by the manufacturer to the British Government on the ethyl alcohol used in making the imported merchandise. The claimed value is 42 shillings, 11½ pence per imperial gallon (plus £40.0.0 each per steel drum, not, as heretofore indicated, at issue). The Government contends that the statutory cost of production should include the excise tax and that the appraised value represents the proper value for the merchandise.

The pertinent provisions of the statute here under consideration (section 402 (f) of the Tariff Act of 1930) read as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchan-

dise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Counsel for the plaintiff, in the case at bar, contends that the British excise tax paid by the manufacturer upon the purchase of the alcohol used to manufacture the imported flavoring extract should not be included in the statutory cost of production, because the amount of tax was no part of the expense of the manufacturer upon which its profit was calculated. In this connection, our attention is directed to the case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305.

In the *Dunhill* case, *supra*, the merchandise consisted of certain tobacco pipes imported from England. The question was whether or not a purchase tax, levied in accordance with English law on chargeable goods sold to what were known as unregistered purchasers for home consumption, was part of "Cost of Production" (section 402 (f), Tariff Act of 1930). Purchases were not considered chargeable with the tax when the sale was made to a registered dealer or for exportation. A registered dealer was a wholesale merchant or manufacturer selling "chargeable goods," and every such merchant or manufacturer was required to register under the British act covering such sales. "Chargeable goods" were enumerated in schedules of the act, one of which included tobacco pipes, and the rate thereon was one-third of the wholesale value thereof. Wholesale value was defined in the British act as the price the chargeable goods would bring, without the tax, at a sale made when the tax became due by a person selling at wholesale in the markets of the United Kingdom to a retail dealer. The British act required the seller of chargeable goods to note the tax as a separate item on the invoice, the tax in question being "recoverable as a debt to His Majesty from the seller." The registered dealer was not permitted to make a profit on the tax nor include it as part of the purchase price of chargeable goods. No liability for payment of the tax arose until a sale was made to an unregistered person or firm, but, when such sale was made, the registered dealer had to then collect the amount of the tax from the buyer.

In holding that the British purchase tax was not an element to be properly added in calculating the dutiable value of the involved merchandise on the basis of cost of production, the court, in the *Dunhill* case, *supra*, page 189, stated:

The only question to be decided here is whether the British tax is properly included in "The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise."

This is a case of first impression, and of course none of the cited cases is controlling.

In our opinion the "usual general expenses" of a business are the expenses of doing business. This would include in addition to the cost and manipulation of materials, all salaries, wages and commissions, traveling expenses, advertising, rents, taxes on buildings, stationery, stenographic, telephone and telegraph expenses, costs of delivery, depreciation on plant and equipment, and other actual outlays. These are the usual general expenses of business, and profit is calculated on the difference between such expenses and receipts.

There is no relation whatsoever between the purchase tax here and the usual general expenses to which we have herein referred. The tax is no part of the manufacturer's expense upon which his profit is calculated. In appraising the value of chargeable goods under the British law it may be noted that such appraisal does not include the tax. It remains as a separate and distinct item payable as such, and therefore cannot be said to constitute an element included within the usual general expenses of his business.

The *Dunhill* case, *supra*, is distinguishable from the case at bar in that, in the former case, the tax in question, unlike the situation here, was not assessed on materials used in producing the goods. It was not a charge arising out of the production of the merchandise and, accordingly, was not a part of the cost of production of the goods. Secondly, the tax involved, in the cited case, was not assessable until after the finished products were manufactured and was assessed on the sale of the merchandise. It was, therefore, assessed on the purchase rather than on the manufacture of the goods. Thirdly, the record in the *Dunhill* case showed that when the manufacturer of the imported pipes sold them to unregistered dealers in the country of exportation the amount of the tax was listed as a separate item on the invoice, and the manufacturer, after collection thereof, remitted the tax to the Government. The facts in the *Dunhill* case, *supra*, are unlike those in the case at bar, and the holding in that case is not controlling of the issue here presented.

The question as set forth by the single judge in the *Dunhill* case (10 Cust. Ct. 506; 509, Reap. Dec. 5794) was stated as follows:

* * * In the first place, the law of the United Kingdom * * * indicates that the purchase tax is not assessed on materials used by manufacturers producing goods, and therefore, it should not be added as a part of the cost of production. In the second place, the tax is not assessable until after the finished products are produced. It is assessed on the sale and is therefore assessed on the purchase rather than on the manufacture of the goods. * * *

The appellate division of this court on review (*United States* v. *Alfred Dunhill of London, Inc.*, 12 Cust. Ct. 407, Reap. Dec. 5991) affirmed the decision of the single judge sitting in reappraisement. The court, on review, page 409, pointed out that the importer had particularly directed its proof toward establishing that the purchase tax therein

involved was not part of the "usual general expenses" incurred in producing the pipes in question, stating, in this connection (page 409), as follows:

* * * There is nothing, however, in the formula for ascertaining cost of production which directly or inferentially authorizes the inclusion of any items of expense incurred *by the purchaser* after the article has been manufactured and is packed ready for shipment. The tax here in question was not a charge arising out of the production of the merchandise. * * *

and, at page 410:

* * * The tax here before us was not an expense "incurred by the manufacturer or producer." It was incurred by the *purchaser*. * * * [Italics by the court.]

In *Oxford University Press, N. Y., Inc. (M. Farris & Co., Inc.)* v. *United States*, 36 C. C. P. A. (Customs) 102, C. A. D. 405, the merchandise involved consisted of certain unbound books in sheets, which were invoiced as "5000 Oxford Dictionary of Quotations. Folded and collated." It appeared that, in arriving at the cost of production, the appellant based current costs (printing and paper) on an edition of 20,000 copies and the "non-recurring" costs (i. e., composition, editorial, correction and proofreading, indexing, etc.) on 65,000 copies, which appellant alleged were to be printed from the finished plates in accordance with the usual course of business followed by publishers when dealing with costs of reference books likely to be in demand for many years. It was the position of the importer therein that the non-recurring costs of the plates, which were all costs prior to the actual finishing thereof, including composition, editorial work, correction, proofreading, indexing, permission fees, etc., should be spread over 65,000 copies of the books.

The single judge, in the *Oxford University Press* case (16 Cust. Ct. 371, Reap. Dec. 6284), in rejecting the above contention of the importer, was of the opinion that Congress did not intend that the dutiable cost of production value under section 402 (f) of the tariff act "should be made contingent or estimated on the basis of any ultimate quantity of production in the mind of a publisher or producer," stating, in this connection, page 373, as follows:

* * * Said section 402 (f) distinctly states in effect that the cost of production of imported merchandise shall include "The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, *at a time preceding the date of exportation of the particular merchandise under consideration* which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business" * * * [Italics by the court.]

The above view was adopted by an appellate division of this court on review (*Oxford University Press, N. Y., Inc. (M. Farris & Co., Inc.)* v. *United States*, 21 Cust. Ct. 277, Reap. Dec. 7611).

Our appellate court, in the *Oxford University Press* case, *supra*, pointing out that, at the time of exportation, only 20,000 copies had

actually been produced, and there was no ev dence of any demand for 65,000 copies, held there was no basis upon which a court could determine the cost of production, except on the 20,000 copies that had been printed. Accordingly, the appellate court agreed with the holdings of the previous tribunals that the cost of the plates should be calculated on the basis of 20,000 copies of the books, i. e., the number produced up to the time of exportation of the involved merchandise.

In *Swizzels, Inc.* v. *United States*, 38 Cust. Ct. 644, Reap. Dec. 8794, decided May 1, 1957, the merchandise consisted of candy balls, packed in boxes, containing 80 rolls of 7 balls each. Forty boxes made up a case. One of the questions for determination was whether an amount of drawback received by the English shipper upon exportation of the completed articles was a part of the dutiable value of the goods. In holding that the drawback in question could not be deducted from the "cost of materials" in determining the statutory cost of production (section 402 (f), Tariff Act of 1930), the court, at page 648, stated:

In the instant case, drawback was received *upon* exportation, so that the original cost of the material must have included the amount thereof.

Under the statute, the cost of production includes the cost of materials at a time which would ordinarily permit the manufacture of the particular merchandise under consideration in the usual course of business. In a case just decided by our court of appeals, *Charles Stockheimer* and *Inter-Maritime Forwarding Co., Inc.* v. *United States*, 44 C. C. P. A. (Customs) 92, C. A. D. 642, suits 4878/4879, decided March 29, 1957, it was held that the language of the statute fixes the cost of materials with respect to a definite time, that is, the latest time which would permit delivery of the materials on the date when manufacture of the merchandise was commenced. The court said that, if the producer had actually made a purchase at the time specified, the price paid would fix the statutory cost of materials and that, if he had not, the cost would be the price for which he might have made a purchase at such time.

It follows that, since the cost of materials is determined as of a specified time, which is at or prior to the date of manufacture of the merchandise, refunds which may be received thereafter, if the merchandise is exported, may not be deducted.

See also *Adolph Goldmark & Sons Corp.* v. *United States*, 31 C. C. P. A. (Customs) 6, C. A. D. 241, which involved the determination of the component material of chief value of marmalade, manufactured from sugar and oranges. It was held that a drawback of duty on sugar, received upon exportation of the marmalade, could not be considered in computing the component material of chief value, since the refund became effective after the marmalade was manufactured.

Likewise, the drawback herein, having been received after the candy was manufactured, may not be considered in determining the cost of the materials used to produce the candy. [Italics quoted.]

In the case at bar, the exporter, at the time of manufacture and prior thereto, paid the excise tax on the ethyl alcohol actually used in the production of the imported merchandise. The said excise tax became, therefore, at that time and prior to exportation, bound up with the other costs of the ingredients to the manufacturer and so formed

an integral part of the "cost of materials" in the production of the merchandise, which "cost of materials," therefore, included, at the time of production, the *per se* cost of the ingredients, plus the excise tax paid.

It has been conceded in the record herein that the flavoring manufactured by the exporter for home consumption use, except for the quantity of ethyl alcohol used therein, is the same as that manufactured for exportation to the United States and, further, that the percentage of ethyl alcohol used in the product for home consumption was subject to the same rate of excise tax as the ethyl alcohol used in manufacturing the product for exportation to the United States. The portion of ethyl alcohol so used in the product manufactured for home consumption constituted, therefore, a part of the cost of materials of the product manufactured for home consumption.

Whatever estimation the exporter herein made respecting the amount of profit to be realized on the sale of the imported merchandise, does not, in this case, have any relation to the cost of the materials entering into the production of the merchandise "at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business." The refund of the excise tax herein, contingent upon the exportation of the merchandise, does not, in and of itself, reduce the cost of the materials which necessarily included the excise tax at or prior to the production of the merchandise. The imported product could not be manufactured without the ethyl alcohol, and all costs in its procurement, including the tax imposed, were part of the statutory cost of production of the imported merchandise. I am of opinion that the holding of the court in the *Oxford University Press* and *Swizzels, Inc.*, cases, *supra*, and the principles enunciated therein are controlling in our present determination. The refund here given on the exportation of the involved merchandise may not be deducted from the cost of materials thereof, in determining statutory cost of production.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of Schweppes orange and lemon flavoring, manufactured in and exported from England on May 18, 1953.

2. That, on or about the date of exportation, such or similar merchandise was not freely offered for sale for home consumption in England (section 402 (c), Tariff Act of 1930, as amended), or for exportation to the United States (section 402 (d), Tariff Act of 1930), nor for sale in the principal market of the United States (section 402 (e), Tariff Act of 1930, as amended).

3. That one of the ingredients used in the manufacture of the imported product is ethyl alcohol.

4. That, at a time preceding the date of manufacture, the manufacturer herein paid an excise tax to the British Government on ethyl alcohol used in making the imported merchandise.

5. That the said excise tax amounted to 212 shillings, 4 pence, per proof gallon of ethyl alcohol.

6. That the said excise tax was refunded to the manufacturer on the exportation of the finished product to the United States.

I conclude as matters of law:

1. That there was no foreign value, export value, or United States value for the imported merchandise, as such values are respectively defined in section 402 (c) of the Tariff Act of 1930, as amended, section 402 (d) of said act, and section 402 (e) of the tariff act, as amended.

2. That cost of production, as that value is defined in section 402 (f) of said tariff act, is the proper basis for the determination of the value of the merchandise involved herein.

3. That, in determining said cost of production, refund of said excise tax, amounting to 212 shillings, 4 pence, per proof gallon of ethyl alcohol, received by the English manufacturer upon exportation of the completed merchandise, may not be deducted from the cost of materials thereof.

4. That the cost of production of the within merchandise is 303 shillings, 1.90 pence, per imperial gallon of extract, plus the cost of stainless steel drums at 40 pounds, each, British currency, which amount is equal to the appraised value herein.

Judgment will be rendered accordingly.