ALFRED DUNHILL OF LONDON, INC. *v.* UNITED STATES

**No. 5794.**—Invoice dated London, England, November 7, 1941.
Entered at New York, N. Y., December 3, 1941.
Entry No. 727944.

(Decided January 20, 1943)

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

CLINE, Judge: This is an appeal for a reappraisement of certain pipes exported by Alfred Dunhill, Ltd., of London, England, on November 7, 1941. There are two qualities of pipes covered by the shipment. One quality, invoiced as "Standard Bruyere pipes," was entered at £0 16s. 2d. each and the other, invoiced as "Shell Brier pipes" was entered at £0 15s. 6d. each. They were appraised at £0 23s. 4d. and £0 22s. 4d. each, respectively, net packed, including taxes.

At the trial, counsel for the respective parties agreed that these pipes have no foreign value, export value or United States value, that the entry and appraisement were made on the basis of cost of production, and that the sole controversy between the parties relates to an addition by the appraiser of an amount equal to a purchasing tax imposed under the laws of the United Kingdom.

The plaintiff introduced as exhibit 1 and exhibit 2 affidavits made by William Percy Denton who is works manager for the manufacturing company.

In exhibit 1 the affiant states that the purchasing tax is not assessed by the United Kingdom on goods sold for exportation or to registered persons or dealers in the home market; that it is assessed in certain instances on sales for home consumption; that on or about November 1941, and for many years prior thereto the pipes were not freely offered for sale or sold for home consumption to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the United Kingdom except to purchasers who agreed—

1. That said pipes shall not be sold or offered for sale retail at less than the price fixed by Alfred Dunhill, Ltd. and that no gift, rebate or allowance by part exchange or otherwise shall be made;

2. That said pipes may not be exported or sold for export outside the British Isles;

3. That said pipes may not be sold or delivered to any person with a view to their being resold by him if the conditions of sale label is torn or defaced.

The affiant states further that the amount of the tax did not in any case enter into or become a part of the cost of materials or cost of fabrication or manipulation or cost of any other process employed in manufacturing or producing such or similar pipes; that the amount of the tax did not in any case enter into or become a part of the usual general expenses in the case of such or similar pipes; that the amount of the tax did not at any time enter into or become a part of the cost of containers or coverings or any other cost, charge, or expense incident to placing the pipes covered by the instant invoice in condition, packed, ready for shipment to the United States; that the amount of the tax did not at any time nor in any case enter into or become a part of an addition for profit equal to the ordinary profit of Alfred Dunhill, Ltd., in the manufacture and production of pipes of the same general character; that Alfred Dunhill, Ltd., in sales for home consumption to unregistered purchasers, merely collects the amount of the tax from the purchaser and pays said amount to the Government and does not make any profit on the tax or include the tax as a part of the purchase price. The affiant attached to his affidavit a printed copy of the taxing law of the United Kingdom, entitled "Finance (No. 2) Act, 1940, 3 & 4 Geo. 6. Ch. 48." An examination of this document indicates that the statements of Mr. Denton in his affidavit with respect to the

exemption ·of certain sales from the purchase tax accords with the provisions therein. In part V, section 18 (2), the following appears:

(2) The following purchases, with the exception of purchases of goods by a registered wholesale merchant as stock for his business or by a registered manufacturer as materials, shall be chargeable purchases, that is to say—

Section 19 (3) shows the amount of the tax chargeable. It reads as follows:

(3) The tax shall be charged at the following rate, that is to say—

(a) in the case of goods falling within any of the classes specified in the first ·column of the Seventh Schedule to this Act and not falling within any of the classes specified in the second column of that Schedule, the basic rate, which shall be one-third of the wholesale value of the goods.

(b) in the case of goods falling within any of the classes specified in the second ·column of the said Schedule, the reduced rate, which shall be one-sixth of the wholesale value of the goods.

Tobacco pipes are listed in the first column of the ·seventh schedule, paragraph 16, as goods chargeable with tax at the basic rate. Therefore, it appears that such goods are subject to a tax of one-third of the wholesale value thereof when sold for consumption in the United Kingdom.

Exhibit 2 relates to the cost of production of the pipes herein involved. The affiant states that he is familiar with the production and other costs of the pipes covered by the instant invoice. A schedule is made a part of the affidavit containing separate columns showing "cost of materials and fabrication," "general expenses," "packing," and "addition for profit," the total cost for the Standard Bruyere pipe being £0 16s. 2d. and for the Shell briar pipe being £0 15s. 6d. Those values are the same as the entered values.

The affiant states further that—

(4) Merchandise of the same general character as the pipes shipped to Alfred Dunhill of London, Inc. of 11 East 26th Street, New York, N. Y., U. S. A. covered by consular invoice 17159 noted above, is not produced by any other manufacturers or producers in the United Kingdom producing or manufacturing goods of the same class or kind. The amount added for profit is the ordinary profit of Alfred Dunhill, Ltd. of London, England, in the manufacturing and production of pipes of the same general character as·those shipped to Alfred Dunhill of London, Inc. of 11 East 26th Street, New York, N. ☙., U. S. A., covered by consular invoice 17159 and is as indicated in the schedule below under column (4) headed "Addition for Profit."

At the trial counsel for the defendant reserved the right to file objections in his brief to exhibits 1 and 2, but an examination of his brief discloses that no objections are contained therein.

Congress prescribed the method of determining cost of production of imported merchandise in section 402 (f) of the Tariff Act of 1930, which reads as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The evidence produced by the plaintiff establishes every requirement of the statute for the proof of cost of production. The value of each of the items in paragraphs (1), (2), (3), and (4) above set forth is separately shown, which is a requirement referred to by the court in *Mrs. G. P. Snow* v. *United States*, 24 C. C. P. A. (Customs) 319, T. D. 48767, and *United States* v. *Malhame & Co.*, 24 C. C. P. A. (Customs) 448, T. D. 48911. The statute does not require that the cost of materials, fabrication, labor, manipulation, or other processes be separately stated. They may be combined in one lump sum under paragraph (1) of section 402 (f). *Philipp Wirth et al.* v. *United States*, 23 C. C. P. A. (Customs) 283, T. D. 48144. The statement concerning the addition for profit, covered by paragraph (4) is also sufficient because the record shows that the exporter is the sole manufacturer in the country of exportation of pipes of this kind and character. *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378.

The defendant contends, however, that the cost of production method of appraisement is used to determine the constructive foreign value, citing T. D. 48860, 71 Treas. Dec. 431, which is a decision of the Treasury Department, and *Lionel Trading Co., Inc.* v. *United States*, 24 C. C. P. A. 432, T. D. 48900, and that, therefore, the purchase tax, which is assessed on finished merchandise sold in the home market and would be a part of the foreign value if there was one, should be added as a part of the general expenses in the computation of the cost of production. I do not agree with this contention. In the first place, the law of the United Kingdom, a copy of which is attached to exhibit 1, indicates that the purchase tax is not assessed on materials used by manufacturers producing goods, and therefore, it should not be added as a part of the cost of production. In the second place, the tax is not assessable until after the finished products are produced.

It is assessed on the sale and is therefore assessed on the purchase rather than on the manufacture of the goods. In the third place, the record shows that, when the manufacturer of the imported merchandise in this case sold pipes to unregistered dealers in the United Kingdom, the amount of the tax was listed as a separate item on the invoice and the manufacturer, after collection thereof, transmitted it to the Government.

The defendant cites *Hugo Reisinger (Inc.) et al.* v. *United States*, 20 C. C. P. A. (Customs) 67, T. D. 45683, wherein a tax collected in substantially the same manner as the purchase tax herein involved was held to be a part of the foreign value of the merchandise. That case is distinguishable from this because here the basis of appraisement is cost of production, not foreign value.

The general expenses in relation to the purchase tax would consist of the cost of typing the amount of the tax on the invoices, the bookkeeping transaction and the cost of transmitting the sum, after collection, to the Government. That charge is already included in the statement of the amount of general expenses, as stated in paragraph numbered "(2)" on exhibit 2.

While the cost of production basis of appraisement may be considered as a substitute for foreign value, it is not in fact foreign value any more than is United States value, which is also ascertained by computation. It is merely another method of computing dutiable value in the absence of a method of determining it by offers and sales in commercial transactions.

The only case brought to our attention which has an issue similar to that herein involved is *Wecker & Co.* v. *United States*, 47 Treas. Dec. 825, T. D. 40989, G. A. 9017, which was decided by Division One of the Board of United States General Appraisers, now the United States Customs Court. Materials like those entering into the manufacture of the merchandise in that case were assessed by Germany with an import tax of 10 per centum, but such tax was remitted in case the product manufactured from those materials was exported. The particular article under consideration in that case was velvet which was not sold in Germany and no sales of similar articles were made. The manufactured product had no foreign value, export value or United States value and it was appraised on the basis of the cost of production. The appraiser added 10 per centum, for the tax, to the cost of production of the merchandise but the court held that the appraiser erred in that respect. That case differs from this in that the German tax law provided that the tax should be assessed on the importation of materials going into the manufacture of an article while in this case the purchase tax is assessed on the finished pipes at the time of sale for home consumption. The facts in the instant case

more strongly support the importer's contention than did those in the case cited, because in this case the purchase tax is not assessed on materials going into the manufactured product while in that case the tax was imposed on materials rather than on the finished products, although it was not applicable when such finished products were manufactured for export. The similarity apparent in the two cases is that the cost of production is involved in each case and the Government claims, as it did in the case cited, that the tax should be added because it would have been proper to add it if the merchandise had been sold for home consumption.

I find that the record clearly supports the following facts:

1. The merchandise under consideration consists of smokers' pipes which, at and immediately prior to the date of exportation, were sold in the home market of the United Kingdom, but the manufacturer controlled the price of all resales, and, therefore, they had no foreign value, export value or United States value, as those terms are defined in section 402 (c), (d), and (e) of the Tariff Act of 1930.

2. The country from which the goods were exported imposed a purchase tax on the value of finished pipes at the time of sale for home consumption, but the tax was not imposed, assessed, or paid on the materials going into the manufacture thereof.

3. When such finished pipes were sold to registered dealers in the United Kingdom, the purchase tax was not collected or assessed.

4. When such finished pipes were sold to unregistered dealers in the United Kingdom, the manufacturer collected the purchase tax from the purchaser as a separate item and transmitted it to the Government, but the unit invoice prices of the pipes in those transactions did not include the amount of the tax.

5. The entered values of the pipes herein involved represent the cost of production thereof.

I hold that, in the absence of foreign value, export value, or United States value, the proper basis of appraisement is cost of production and I appraise the merchandise at the values indicated in paragraph 5 of the above findings of fact. Judgment will be entered accordingly.