UNITED STATES *v.* INTERNATIONAL EXPEDITERS, INC., FOR WINSOR & NEWTON, INC. (No. 4739) [1]

United States Court of Customs and Patent Appeals, January 14, 1953

*Charles J. Wagner,* Acting Assistant Attorney General (*Daniel I. Auster* and *Alfred A. Taylor, Jr.,* special attorneys, of counsel), for the United States
*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for appellee.

[Oral argument October 7, 1952, by Mr. Auster and Mr. Jordan]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, COLE, and JACKSON (retired), Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal taken on behalf of the Government from the judgment of the Second Division of the United States Customs Court, Reap. Dec. 8105, 26 Cust. Ct. 552, affirming that of the single judge in a reappraisement proceeding.

The merchandise was imported from England by International Expediters, Inc., and entered at the port of New York City in April,

[1] C. A. D. 511.

1947. It was imported for Winsor & Newton, Inc., of New York City. It appears that Winsor & Newton, Ltd., of Wealdstone, Harrow, Middlesex, England, was the exporter.

The merchandise was referred to in some of the official papers as "Artists' colors in tubes." It consists of colored materials used by artists in painting pictures and is one of many items of artists' supplies included in the shipment with which it came. It is identified in a stipulation on which the case was submitted for trial as being "described in the invoice as 'Studio Tube Series 2.'"

The stipulation upon which the controversy was submitted to the court reads:

1. That the merchandise the subject of this appeal consists of artists' colors imported by Winsor & Newton, Inc., the purchaser and ultimate consignee, from Winsor & Newton, Ltd., of Wealdstone, Middlesex, England, manufacturers and sellers thereof, that it is described in the invoice as "Studio Tube Series 2", that it was invoiced and entered at 39 shillings per dozen tubes, the list price less a discount of 40 per cent plus the cost of cases (packing and woodwork) and was appraised at the said list price less a discount of 33⅓ per cent plus the cost of cases (packing and woodwork) on the basis of cost of production under Sec. 402 (f), Tariff Act of 1930.

2. That on or about March 18, 1947, the date of exportation herein and at all other times material herein such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the country of exportation in the usual wholesale quantities, and in the ordinary course of trade for home consumption therein or for export to the United States and other parts of the world; that such or similar imported merchandise was not at the aforesaid times and under the aforesaid conditions freely offered in the United States for sale for domestic consumption therein; and that cost of production, as defined in Sec. 402 (f) Tariff Act of 1930, is the proper basis of appraisement of the involved merchandise.

3. That throughout the entire year 1947 and at all other times material herein the said Winsor & Newton, Ltd., sold merchandise such or similar to the involved merchandise in wholesale quantities for home consumption in the country of exportation and for export to the United States and other parts of the world; and that of the total quantity so sold 42 per cent was sold for home consumption in the country of exportation, 47 per cent for export to countries other than the United States and 11 per cent for export to the United States.

4. That of the total quantity so sold for home consumption in the country of exportation 31 per cent was sold at the list price less wholesalers' discount of 40 per cent plus packing, at which price the merchandise herein was entered, and 69 per cent was sold at the list price less retailers' discount of 33⅓ per cent plus packing at which price the merchandise herein was appraised; that of the total quantity so sold for export to countries other than the United States 92 per cent was sold at the said entered price and 8 per cent at the said appraised price and that the entire quantity so sold for export to the United States was sold at the said entered price.

5. That of the total individual sales of the said merchandise for home consumption in the country of exportation 35 per cent was sold at the said entered price and 65 per cent at the said appraised price; that of the total individual sales of the said merchandise for countries other than the United States 58 per cent was sold at the said entered price and 42 per cent at the said appraised price; and that all

sales of said merchandise for export to the United States were made at the said entered price.

6. That of the total quantity of the said merchandise so sold for home consumption in the country of exportation and for export to countries other than the United States and for export to the United States, 67 per cent was so sold at the said entered price and 33 per cent at the said appraised price; and that of the total individual sales in all of said markets 37 per cent was sold at the said entered price and 63 per cent at the said appraised price.

7. That during the entire year 1947 and at all other times material herein both the entered price and the appraised price of the involved merchandise were made up of (a) the cost of materials, labor and all other manufacturing costs as of the time prescribed by Sec. 402 (f) (1) Tariff Act of 1930, (b) the usual general expenses (not less than 10 per cent of such cost), (c) the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and (d) an addition for profit not less than 8 per cent of the sum of items (a) and (b) above; and that the said addition for profit in the entered price is equal to the amount ordinarily added for profit in the case of merchandise of the same general character as the involved merchandise, by manufacturers in the country of exportation who were engaged in the manufacture of merchandise of the same class or kind, in their sales at list prices less wholesalers' discounts, and that the said addition for profit in the appraised price is equal to the amount ordinarily added for profit in the case of merchandise of the same general character as the involved merchandise, by manufacturers in the country of exportation who were engaged in the manufacture of merchandise of the same class or kind, in their sales at list prices less retailers' discounts.

8. That at all times material herein the facts relative to the business of such manufacturers other than Winsor & Newton, Ltd., were the same in all material respects as those in the case of Winsor & Newton, Ltd., the manufacturer and seller herein.

It is agreed that, upon the facts of this case, the dutiable value of the merchandise must be determined on the basis of cost of production as that cost is defined in section 402 (f) of the Tariff Act of 1930, which reads:

(f) Cost of Production—For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufac-

turers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

As the case was presented before the respective tribunals of the Customs Court and before us, the controversy relates solely to a portion of the "addition for profit" provision in the fourth paragraph of the section.

The "cost of production" which is to be used in determining dutiable value in cases where cost of production is applicable is made up of factors or elements defined in the four paragraphs of section 402 (f), *supra*. The element of profit is the sole element specified in paragraph (4) and it is to be added to the sum obtained by adding the elements named in paragraphs (1), (2), and (3). The addition for profit may not be less than 8 per centum of the sum of the amounts named in paragraphs (1) and (2), but it must be more than 8% if more than that is found to be ordinarily added—a finding which was made in the instant case.

The finding that more than 8% should be added is not in dispute but the statute does not state a formula, or standard for use in determining the amount of the excess over 8% and the controversy grows out of the fact that in administering the law it was necessary to have such a standard.

Obviously, in this case, it was incumbent upon the importer to act first in this respect when it entered the merchandise, and it did so.

Entry was made at the list price of 39 shillings per dozen tubes less a discount of 40 per centum plus the cost of cases. That was the discount allowed that class of purchasers characterized as wholesalers to which class the *major quantity* of merchandise was sold.

When the local appraiser acted he appraised the merchandise at the same list price—39 shillings—but less a discount of only 33⅓ per centum plus the cost of cases. That was the discount allowed that class of purchasers characterized as retailers, to which class the *greater number of sales* were made.

It may be said that the prices to both classes were wholesale prices and in both instances the costs of packing, etc. were the same. So, the difference of 6⅔ per centum between the respective discounts is the basis of the controversy.

Both the single judge, sitting in reappraisement, and the appellate division of the Customs Court sustained as the correct dutiable value the amount resulting from the use of the 40% discount allowed that category of purchasers referred to as wholesalers "on the theory," as stated in the opinion of the appellate division, "that the manufacturer obtained therefrom the greater financial return and the greater portion of profits."

In the brief on behalf of the Government before us, it is said:

The importer claims that the proper value is the price at which the merchandise was sold to wholesalers, to wit, 39 shillings per dozen, less 40 per cent, plus cases and packing. The Government claims that the proper value is the price at which the merchandise was sold to retailers, to wit, 39 shillings per dozen less 33⅓ per cent, plus cases and packing. The importer claims that the profit which is to be added is generally the *major quantity* of merchandise sold, which is represented by sales to wholesalers. The Government claims that the *major portion of sales* determines "the profit which is ordinarily added * * *" and is represented by sales to retailers. The greater *quantity* of merchandise was sold at the entered value, whereas the greater number of sales was made at the appraised value. (Italics quoted).

It seems to be the view of counsel for the Government that determination of the profit ordinarily added under the "cost of production" provision of the "value" section (402) of the Tariff Act should be regarded as analogous to the determination of usual wholesale quantities in cases involving statutory foreign, export, and United States values.

The following is taken from the brief on behalf of the Government, the italics being quoted:

We urge that "the profit which is ordinarily added" under section 402 (f) (4), *supra,* should be determined in the same manner as the usual wholesale quantity is determined when the sales vary in quantities. It is an expedient, fair and workable formula, and should be equally applicable to the problem present herein. The usual wholesale quantity is determined by ascertaining the quantity at which the *greatest number* or *major portion* of sales in wholesale quantities are made. That quantity then is the usual wholesale quantity. The price at which the merchandise is freely offered for sale to all purchasers in such *usual* wholesale quantities is the correct dutiable value. This has been the consistent rule for a long period of time. *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129; and *Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341.

The words "usual" and "ordinary" are synonymous. The word "ordinary" is defined by the lexicographers as follows:

THE OXFORD DICTIONARY:

ordinary

Sub. 4. Of common or every day occurrence; frequent; abundant, * * * Commonly practiced or experienced; common, customary, *usual.*

5. Of the usual kind, such as is commonly met with, not singular or exceptional.

WEBSTER'S NEW INTERNATIONAL DICTIONARY,
2nd Edition, Unabridged

ordinary 1. Belonging to what is usual; having or taking its place according to customary occurrence or precedence; *usual;* normal.

*Ordinarily* is the adverb of *ordinary* and has been defined in the Oxford Dictionary as:

In ordinary manner or degree;

(1) In conformity with rule or established custom or practice; according to settled method; as a matter of regular practice or occurrence.

(2) In the ordinary or usual course of events or state of things; in most cases; usually; commonly.

Applying the above definition of "ordinarily" to section 402 (f) (4), *supra,* it would read:

> * * * An addition for profit * * * equal to the profit which ordinarily (in most cases) (usually) is added * * *.

The profit added by the manufacturer in most sales or the major portion of sales is the profit ordinarily added, as it is more indicative of the general practice of a manufacturer than determining the profit based upon quantity. * * *

It will be observed that the specific phraseology in section 402 (f) (4) pertinent to the question under immediate consideration, reads:

> * * * An addition for profit * * * equal to the profit which ordinarily is added * * *.

If we understand the position of counsel for the Government aright, it is their suggestion that, based upon the definitions quoted, the phraseology be construed or interpreted as it might be if it read: "An addition for profit * * * equal to the profit which *in most cases* is added * * *." That is, counsel for the Government apparently would have the court re-write the statute by interpretation and substitute "in most cases" for "ordinarily."

In its argument immediately following the quotation, however, it is said:

> The profit added by the manufacturer in most *sales* or the major portion of *sales* is the profit ordinarily added, * * * . (Italics ours)

The same view was presented before the appellant division of the Customs Court, which commented:

> This argument might possess some validity if there were any authority for the substitution of the word "sales" for the word "cases." But the cost of production statute does not refer to "sales," and the phrase "in most cases" submits itself as readily to interpetation as "most units" or "major quantity" sold as it does to "most sales" or "the major portion of sales."

We agree with the foregoing observation of the appellate division.

Sales or offers of sales *in wholesale quantities,* of course, constitute the bases upon which foreign, export and United States values, as statutorily defined, must be determined. Quantity is a statutory term and, therefore, is of the essence of the subject matter. The sales or offers must be of wholesale quantities which ordinarily are made to those generally characterized as wholesalers who usually are the primary purchasers from the manufacturers or producers. However, there may be other purchasers from the manufacturers or producers, such, for illustration, as jobbers who sell to retailers (although jobbers, as the term is generally understood, usually buy from wholesalers), and even to retailers—that is, those who purchase to resell to consumers at retail prices. The different classes of purchasers ordinarily receive different rates of discount for obvious reasons, and in determining dutiable value, it is proper to consider all sales which are made at wholesale prices( taking the discounts into consideration) in order to determine usual wholesale quantities.

The foregoing general principles may be found stated with greater elaboration in the *Semon Bache & Co.*, *Mexican Products Co.*, and *Jenkins et al.* cases cited in the excerpt quoted, *supra*, from the brief on behalf of the Government, but it should be borne in mind that cost of production was not involved in any one of those cases.

An argument is presented before us by Government counsel which does not appear to have been made before the tribunals of the Customs Court—at least we do not find it discussed in their decision—which, we presume is intended to bear upon what we have characterized as the claim of an analogy between the determination of the "profit which is ordinarily added" under section 402 (f) (4), *supra*, and "usual wholesale quantity" when the sales vary in quantity.

In the brief for the Government it is said:

It is a well established principle of customs law that the value sought for in section 402, *supra*, either directly or by construction, is foreign or export value, whichever is higher.

This principle is set forth clearly in the cases of *Dodge & Olcott Co.* v. *United States*, 48 Treas. Dec. 78, T. D. 41049, and *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. (Customs) 213, C. A. D. 274.

The brief quotes the following from this court's decision in the *New York Merchandise case*, so cited:

In considering the importance of arriving at the right conclusion in the instant case on the decision of this important and sharply controverted question, we think it not improper to say, and it has been elsewhere often said, that in arriving at United States value or the cost of production under the act of 1930 of [and?] other acts similar in character, we must take into consideration the fact that Congress was trying by including certain items and excluding others, to arrive at what might be comparable to a foreign value or an export value if there had been one, and the Congress sought to apply as a settled tariff policy the foreign or export value whichever [whenever] it was applicable, in preference to the United States value, which was obviously a less satisfactory basis for arriving at the final appraised value. * * *

The issue in that case did not relate to any element entering into the cost of production defined in section 402 (f) (4). Our decision in that case, prepared by the late Judge Oscar Bland, recites:

At the trial, on reappraisement, it was stipulated and agreed for the purpose of the trial, that the sole issue to be decided was whether or not the final appraised value should be based upon the United States value or upon the cost of production, and that if the United States value was the proper basis to be applied, the proper dutiable value was $18.517 per thousand pieces, net, packed, but that if the cost of production was found to be the proper basis, the invoice value, to wit, 2.80 yen per hundred pieces, represented the cost of production. It was also agreed that there was no foreign value or export value of the instant merchandise.

We agreed with the holding of the trial court that upon the facts of the case United States value could not be applied as a matter of law, and also agreed with its finding that there was substantial evidence to support the cost of production.

We have examined the cited decision of the late Judge Brown (rendered July 27, 1925) sitting singly in reappraisement in the *Dodge & Olcott Co.* v. *United States* case, 48 Treas. Dec. 78, T. D. 41049. Cost of production was not involved in that case in any way, the issue being between foreign value and American value under the Tariff Act of 1922, and what was there said of cost of production was *obiter dictum*.

The brief on behalf of the Government also cites the decision of this court in the case of *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378, and states:

\* \* \* this court, in considering section 402 (e) of the Tariff Act of 1922, accepted as indicative of congressional intent the following quotation from the report of the Senate Committee on Finance upon what became section 206 of the Antidumping Act of 1921 which is the portion of the Antidumping Act which was the forerunner of section 402 (e) of the Tariff Act of 1922, and section 402 (f) of the Tariff Act of 1930:

> The purpose of this definition is to create a constructive foreign-market value based on the cost of material and labor at a time preceding the date of shipment of the imported merchandise which would ordinarily permit the manufacture or production of such merchandise in the usual course of business. It is not limited to the actual cost of the imported merchandise. \* \* \*

The decision in that reappraisement case, which also arose under the Tariff Act of 1922, was prepared by late Judge Irvin L. Lenroot. It had been found by the appellate division of the Customs Court that there was no foreign, export, or United States value and that the proper dutiable value was the cost of production as defined in section 402 (e) (4) of the Tariff Act of 1922, prototype of section 402 (f) (4) of the Tariff Act of 1930, which is involved here.

In that case we reversed the judgment of the appellate division, not as to the proper dutiable value being the cost of production as defined by the statute, but because of certain specific errors relating to (a) cost of material and labor, not involved here; (b) general expenses, not involved here; and (c) the legal result of certain facts relating to additions for profit, but not any of the facts presented in this case.

It really seems, from the decision there, that the issue respecting addition for profit probably arose from a contention that the addition for profit should be limited to the actual profit which the particular exporting manufacturer or producer made.

In our decision, immediately after quoting the excerpt from the Report of the Senate Committee on Finance reproduced *supra*, we said:

It would appear, therefore, that it was not the intent of Congress, when it enacted said section 206, to limit the cost of production, in cases where said section was applicable, to the actual cost of production of the imported merchandise, including actual profit realized by the manufacturer, and we think a like construction should be given to section 402 (e) of the Tariff Act of 1922. In

other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable. If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. We have so held with respect to said section 206 of the Antidumping Act of 1921. *Cottman & Co.* v. *United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114.

The decision in the *Cottman & Co.* case, so referred to, was relied upon by counsel for the importer before the respective tribunals of the Customs Court who agreed that it supported counsel's view, and is relied upon before us. It is hereinafter again referred to.

Counsel for the Government proceeding upon the theory that, under the several decisions which so far have been cited and discussed herein, "the principles applicable in those cases should be applied in the case of a direct or constructive foreign or export value," argues that the decision of the appellate division is in conflict with our decision in the case of *F. S. Whelan & Sons* v. *United States*, 39 C. C. P. A. (Customs) 168, C. A. D. 482. In that case, which involved the appraisement of birch plywood imported from Canada, we affirmed the decision of the trial court holding that under the facts there appearing, the usual wholesale quantities were those quantities involved in the major portion of sales.

The controversy there involved only the proper interpretation of section 402 (c) of the Tariff Act of 1930 which relates alone to foreign value.

Cost of production was not involved and was not referred to directly or indirectly in our decision. We are unable to agree, therefore, that because the appellate division did not agree with a theory advanced by counsel for the Government, its decision was "in conflict with" our decision in the *Whelan & Sons* case, nor is it in conflict with any decision of this or any other court to which our attention has been directed.

On the contrary, the decision of the appellate division is, we think, in harmony with the prevailing opinion of this court prepared by the late Presiding Judge William J. Graham in the case of *J. H. Cottman & Co.* v. *United States*,[1] 20 C. C. P. A. (Customs) 344, T. D. 46114

[1] As recited in the brief on behalf of the importer:

The *Cottman* case was litigated three times in this court (*United States* v. *Cottman*, 18 C. C. P. A. (Customs) 132 (Suit 3282); *Cottman* v. *United States* (Suit 3513) and *United States* v. *Cottman* (Suit 3520), 20 C. C. P. A. (Customs) 344; *United States* v. *Cottman*, 23 C. C. P. A. (Customs) 378, (Suit 3925)).

The brief continues:

We have read the record in each case and nowhere therein do we find any evidence as to the number of individual sales made at any of the several prices charged. Moreover, we have read also the opinion of the trial judge, the appellate division of the Customs Court and of this court in each of the three cases and find no reference to the matter of the number of individual sales or to the necessity for proof on this point in any of them.

(alluded to in the excerpt from the decision in the *Henry Maier* case, *supra*) and also in harmony with our decision in the case of *Marine Products Co.* v. *United States*, 39 C. C. P. A. (Customs) 52, C. A. D. 462.

Counsel for the Government point out that the question of whether the profit realized in the major portion of sales instead of that realized from the major quantity of products sold should be adopted as a formula or standard and thus control, was not raised in the *Cottman & Co.* and *Marine Products Co.* cases, *supra*, and hence insist that the decisions in those cases are not controlling here.

It is true that the principal question here involved was not raised in those cases, nor has it been raised in any case heretofore brought to our attention and we do not regard the rule of *stare decisis* as being strictly applicable here.

However, the brief for the importer before us cites the case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305, as being a rejection of the theory of counsel for the Government, to the effect, as stated in the brief for importer:

* * * that as "cost of production" has been referred to in several decisions of this court and the Customs Court as a constructive, or a substitute for, foreign value, the rules of construction applied by this court and the Customs Court to the foreign value and other value provisions of tariff acts (not including the cost of production provision) should be applied, likewise, to the cost of production provision.

The merchandise involved in that case consisted of two qualities of tobacco pipes which were found to be subject to valuation on the basis of cost of production. The item of "addition for profit" defined in section 402 (f) (4) was not involved, but there was involved the "general expense" item defined in section 402 (f) (2) which reads: "(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;". It seems to have been conceded that not less than 10 per centum was required to be included as general expenses, just as it is conceded that not less than 8 per centum as addition for profit must be included under section 402 (f) (4), and the immediate question was whether a certain described "purchase tax levied in accordance with English law" was properly added by the local appraiser to the general expense minimum.

The importer's appeal to reappraisement, of course, was first passed upon by a single judge of the Customs Court, sitting in reappraisement, who sustained the appellant's contention in a decision (See *Dunhill* v. *United States*, 10 Cust. Ct. 506, R. D. 5794) from which we quote the following:

The defendant contends, however, that the cost of production method of appraisement is used to determine the constructive foreign value, citing T. D. 48860, 71 Treas. Dec. 431, which is a decision of the Treasury Department, and *Lionel Trading Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 432, T. D.

48900, and that, therefore, the purchase tax, which * * * would be a part of the foreign value if there was one, should be added as a part of the general expenses in the computation of the cost of production. I do not agree with this contention.

\*　　\*　　\*　　\*　　\*　　\*　　\*

While the cost of production basis of appraisement may be considered as a substitute for foreign value, it is not in fact foreign value any more than is United States value, which is also ascertained by computation. It is merely another method of computing dutiable value in the absence of a method of determining it by offers and sales in commercial transactions.

Appeal was taken on behalf of the Government and heard by the First Division of the Customs Court which, one judge dissenting, affirmed the decision of the single judge. *United States* v. *Dunhill,* 12 Cust. Ct. 407, R. D. 5791.

We quote the following from the opinion of the Presiding (now Chief) Judge of that court:

The Government's theory, and it is stated to be just that, is that cost of production is a "constructive foreign value," that such a sales tax as is here under consideration would be properly a part of foreign value, and therefore it should properly be part of cost of production.

\*　　\*　　\*　　\*　　\*　　\*　　\*

In *Lionel Trading Co.* v. *United States,* 24 C. C. P. A. (Customs) 432, T. D. 48900, the court referred to cost of production as a "substitute for foreign value." The Treasury Department in T. D. 48860 refers to it as a "constructive foreign-market value." By whichever term it is more aptly described, the fact remains that value based on cost of production is something different from foreign value as that value is defined in section 402 (c).

\*　　\*　　\*　　\*　　\*　　\*　　\*

Whether or not such a tax under the facts in the case at bar would be properly part of foreign value is not conceded and is not before us.

In the course of our decision affirming that of the appellate division, we said:

In our opinion, since it was agreed that the valuation of the merchandise was based on cost of production the pertinent items of the paragraph must be strictly followed in calculating such cost, and any reference to any other kind of value, *such as substitute or constructive values, is irrelevant and need not* be discussed (Italics new here.)

It is our view that the issue in the instant case is analogous in principle to that in the immediately foregoing case, and that to sustain the contention made on behalf of the Government here would be inconsistent with the principle of our decision there.

In the decision of the appellate division in the instant case it is said:

The fact remains that the merchandise at bar is ordinarily sold by the manufacturer to both wholesalers and retailers, according to the stipulation of the parties, and sales to either might properly indicate "the profit which ordinarily is added." Nevertheless, the language of the statute does not contemplate the addition of different amounts for profit, and it devolves upon this court to select which of two profits ordinarily received by the manufacturer shall be added.

In this connection, it is proper to consider what we believe to be a basic principle of business economics, namely, that the profit motive is the spark plug of all business endeavor in the Western World. The manufacturer counts the profit he receives as the measure of the success or the failure of his business. His concern is to produce and sell in quantity so that his margin of profit, actual, not percentage wise, shall be as great as it is possible for him to make it. Thus, from a manufacturer's standpoint, his ordinary profit is that derived from the sale of the greatest portion of his merchandise, and the number of sales required in the disposition of a minor portion of his products at a greater percentage profit, but a smaller realized profit, is not, in business practice, indicative of ordinary profit.

We think we should take cognizance of the fact that the manufacturer's emphasis is upon units sold, rather than upon sales made, and construe the phrase "the profit which ordinarily is added" in a manner which recognizes that business precept. As applied to the instant case, since the greater quantity of this merchandise was sold to wholesalers, with the consequent realization of the greater proportion of returns, sales to wholesalers should, in this case, constitute the basis upon which the profit ordinarily added is to be determined.

We share the views so expressed.

It may not be amiss to suggest that while *in the instant case* the standard which we approve will result in a somewhat lower amount of duty than would result from application of the standard approved by the local appraiser, the exact reverse may be true in other cases that will arise.

However that may be, we regard the decision appealed from as sound and it is *affirmed*.

JACKSON, J., retired, recalled to participate herein in place of WORLEY, J.