(Reap. Dec. 10684)

ENGLISH ELECTRIC EXPORT & TRADING Co., INC., ET AL. *v.* UNITED STATES

Entry No. 2079, etc.

(Decided February 18, 1964)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiffs. *John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

FORD, Judge: The appeals for reappraisement, which were consolidated for the purpose of trial and are set forth in schedule "A," attached hereto and made a part hereof, cover 26 of 51 entries of components for two large vertical water wheel electrical generators, which were assembled and installed at the McNary Dam on the Columbia River. Appraisement was made on the basis of "Cost of Production," under section 402(f) of the Tariff Act of 1930, at the invoice value of the merchandise, including the price of the article covered by the entry, escalation charge, and packing, plus 2.689 percent to cover an

undercharge of $82,307.88, with an allowance granted for delivery charge or inland freight.*

Plaintiffs herein concede and agree that the basis of appraisement, i.e., cost of production, is the proper basis of value, but contend said value for the 26 shipments involved herein is as set forth in exhibit "A" of plaintiffs' exhibit 3, an affidavit received in evidence, as follows:

### COST OF PRODUCTION

| | |
|---|---:|
| Materials & Fabrication, etc. | £691, 803 |
| General Expenses | £112, 626 |
| Containers, Covering, etc. | £39, 400 |
| Profit | £90, 096 |
| Total | £933, 925 |

Plaintiffs' exhibit 3, an affidavit of Geoffrey Hazlitt Wilson, a chartered accountant and assistant group works accountant for the manufacturer, after giving various information, made the following statements in paragraphs 5 and 7 of said affidavit:

(5) The invoice prices filed in connection with each entry as listed in Exhibit A attached, reflected the then estimated value of each shipment based on the F.O.B. U.K. port of exportation price to the Export Company (and see para (7) below for determination of actual F.O.B. U.K. port of exportation price). They did not reflect the actual Cost of Production and this Cost of Production could not be calculated at the time of exportation as the costs could not then be accurately determined.

   \*       \*       \*       \*       \*       \*       \*

(7) The item "Balance of F.O.B. U.K. port price to Export Company" on the attached Exhibit A refers to the balance of the contract price remaining after the invoicing of individual shipments. The total value of all invoices attached to individual shipments was $3,060,997.18 and the difference between this figure and the final F.O.B. value (before deducting the Credit for Penalty referred to in Paragraph 8 below) of $3,143,305.06 was invoiced in one amount at $82,307.88 at the end of the contract, after all shipments were completed.

The examiner of the office of the United States appraiser of merchandise at New York testified that the invoice value was accepted and the delivery costs were deducted, plus an addition of 2.689 percent, which represented the undercharge referred to by Mr. Wilson in paragraph 7 of his affidavit, *supra*.

Counsel for plaintiffs contends that the actual cost-of-production figures may be accepted in certain circumstances, such as where merchandise of the same general kind is not ordinarily produced by others in the country of manufacture, citing *United States* v. *Henry Maier*,

---

*1. R60/12928—delivery charge enumerated, but not deducted.
  2. R60/14341—no delivery charge enumerated or deducted.
  3. R60/18521—appraised at *per se* advance of articles, with additions and allowances as set forth, *supra*.

18 CCPA 409, T.D. 44679; *Cottman & Co.* v. *United States*, 20 CCPA 344, T.D. 46114; *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378; *United States* v. *F. B. Vandegrift & Co. et al., Kimble Glass Co.*, 26 CCPA 360, C.A.D. 42; *United States* v. *Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.)*, 31 CCPA 75, C.A.D. 252; *Marine Products Co.* v. *United States*, 39 CCPA 52, C.A.D. 462.

The case law on this principle is abundantly clear that, under certain circumstances, actual profit may be utilized in ascertaining the profit under the cost-of-production basis of appraisement, as set forth in section 402(f), *supra*. See also *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407.

If this case falls within the purview of the above principle, the court may consider the cost-of-production figures supplied by the manufacturer in ascertaining the profit, as set forth in section 402(f), *supra*. An examination of the cost-of-production figures given in pounds sterling, when converted into dollars, does not appear to equal the original f.o.b. figure. It is also to be noted that said cost-of-production figures do not take into consideration the additional sum of $405,433.35, allowed in the change order, dated October 25, 1957, under the provisions of the escalation clause of the contract. A copy of said contract was received in evidence as plaintffs' exhibit 2 and provides, so far as the escalation clause is concerned, as follows:

32. ESCALATION.—If, at the time of shipment of the equipment, or each complete unit thereof, the Contractor's applicable established price for such equipment is higher or lower than the Contractor's applicable established price at the date of his bid, the Contractor shall certify the percent increase or percent decrease to the Contracting Officer and the contract price will be adjusted accordingly: Provided, however, that in no event shall the price paid for the equipment exceed the bid price by more than 20 percent, unless the work is suspended as provided for under General Provision 31, "Suspension of Performance."

In conjunction with the foregoing provision is the statement, contained in paragraph 6 of the affidavit, plaintiffs' exhibit 3, which reads as follows:

(6) The reference to "Escalation" in the attached Exhibit A refers to the escalation as it appears on the invoices and relates to the clause in the contract allowing the contract price to be varied to reflect increases or decreases in the cost of labour and materials occurring between the tender date and the date of delivery. The amounts shown for escalation were invoiced by the Company to the Export Company to cover increased costs of labour and materials during the period of manufacture over the cost of such items at the time of bidding, which escalation was approved and paid to the Export Company by the U.S. Army Corps of Engineers and was in turn received by the Company.

As indicated in paragraph 6 of plaintiffs' exhibit 3, the additional sum of $405,433.35, which sum covers only the cases before the court, was granted as a result of increased costs of material and labor. Ac-

cordingly, this figure must necessarily be reflected in the cost-of-production figures. As indicated, *supra*, the total cost-of-production figure, when converted into dollars, does not equal the original f.o.b. figure, which figure does not include the escalation charge and is, therefore, well below the "final F.O.B." figure.

Paragraph 7 of the affidavit, as indicated, *supra*, states that the undercharge of $82,307.88 or "Balance of F.O.B. U.K. port price to Export Company" was billed to the importer to cover the balance of the contract price remaining after the invoicing of the individual shipments. This sum should also be reflected in the cost-of-production figures. However, an examination of the cost-of-production figures, contained in exhibit "A" of plaintiffs' exhibit 3, indicates that said sum was not taken into consideration when the figures were prepared. Said sum was added to the sales price to the importer, but not to the cost-of-production figures.

Accordingly, I cannot accept the cost-of-production figures as representing the information required under section 402(f) of the Tariff Act of 1930. In view of the foregoing, it is unnecessary to determine whether or not the facts in the case at bar bring it within the principle of law that actual profit may, under certain circumstances, be used in determining cost of production under section 402(f) of the Tariff Act of 1930.

Counsel for plaintiffs also contends the manner of appraisement is improper, because the law requires that each element be established separately, citing *Mrs. G. P. Snow* v. *United States*, 24 CCPA 319, T.D. 48767; *United States* v. *Malhame & Co.*, 24 CCPA 448, T.D. 48911; *Alfred Dunhill of London, Inc.* v. *United States*, 10 Cust. Ct. 506, Reap. Dec. 5794. The examiner did testify that each entry was appraised separately and, in his opinion, followed the law. It is at this point to be noted how accurately this appraisement was made. The addition of 2.689 percent, representing the sum of $82,307.88 invoiced to the importer, when computed based upon the final f.o.b. price for the entire 51 shipments, as set forth in exhibit "A" of plaintiffs' exhibit 3, is within a few dollars of said figure. Obviously, therefore, the separate elements of cost of production were taken into consideration.

I now turn to the claim, in the alternative, of the plaintiffs that if the actual profits were utilized by the Government in its appraisement, then the reduction in price of $175,300 should be deducted from the profit. I believe this position is untenable. According to the record, this sum was allowed because of the failure of the plaintiffs to meet certain specifications which were not apparent until sometime after the last shipment and after final assembly. It was admitted by the witness for plaintiffs that this allowance would not affect the cost of

construction of the equipment involved. In any event, section 402(f) specifically provides as follows:

Section 402(f) of the Tariff Act of 1930:

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The allowance of the sum of $175,300 by the importer unquestionably reduced the amount of profit which was realized on the importations. However, the profit with which the court is concerned in cost-of-production cases is the profit of the manufacturer and not of the importer.

In addition thereto, even if it did affect the cost of production in the overall picture, it would not be a proper deduction, since it was not a cost at a time preceding the date of exportation of the merchandise under consideration.

In view of the foregoing, I find as matters of fact:

1. The merchandise involved herein consists of parts for two large vertical water wheel generators, imported from England in 26 shipments during the period from November 1954 through November 1956, at Portland, Oreg., Baltimore, Md., and New York, N.Y., to be erected at the McNary Dam on the Columbia River.

2. Said merchandise was appraised on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930.

3. That such or similar imported merchandise was not freely offered for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with an allowance made for duty, transportation, insurance, and other necessary expenses from the place of shipment to the place of delivery.

I, therefore, conclude as matters of law:

1. That at the several dates of exportation, there was no foreign, export, or United States value for the merchandise involved herein, as such values are defined in section 402 of the Tariff Act of 1930.

2. That the cost of production, as defined in section 402(f) of the Tariff Act of 1930, is the proper basis of value.

3. That the cost of production of the involved merchandise was the appraised value in each appeal involved herein.

Judgment will be entered accordingly.